UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 4:19CR01053 JAR (SPM) |
| | ) |
| NICHOLAS STOPPELMANN, | ) |
| | ) |
| Defendant. | ) |

**GUILTY PLEA AGREEMENT**

Come now the parties and hereby agree, as follows:

**1. PARTIES:**

The parties are the defendant NICHOLAS STOPPELMANN, represented by defense counsel Nanci McCarthy, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri.  This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri.  The Court is neither a party to nor bound by this agreement.

**2. GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to the charges in the indictment, the Government agrees that no further federal prosecution will be brought in this District relative to the defendant's receipt, distribution, and possession of child pornography between July 1, 2018, and February 21, 2019, of which the Government is aware at this time.  In addition, the parties agree that the U. S.

1

Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea.  The parties further recommend to the Court that a four-level variance be granted reducing defendant's Total Offense Level to level twenty-eight (28), which the parties believe will adequately reflect the seriousness of the offense and provide just punishment for the offense. The parties do not have jointly recommended sentence. The defense can ask for any sentence within the statutory range.  The government has agreed not to recommend a sentence above 78 months in prison.  The parties understand that the District Court is neither a party nor bound by the Guidelines' recommendations agreed to in this document.

The defendant understands that he is subject to a mandatory minimum sentence of five (5) years in Count One.

Defendant agrees to forfeit all the computer devices seized by police including his IPhone, Apple Laptop, and Kindle with SD Card.

**3. ELEMENTS:**

As to Count One, the defendant admits to knowingly violating, Title 18, United States Code, Section 2252A(a)(2), and admits there is a factual basis for the plea and further fully understands that the elements of the crime of Distribution of Child Pornography which he admits to knowingly committing and for which he admits there is a factual basis are: (1) defendant knowingly distributed (2) using any means or facility of interstate commerce, including by computer, (3) images of child pornography, (4) which were visual depictions where the production of such visual depictions involved the use of a minor engaging in sexually explicit conduct and such visual depictions were of a minor engaging in sexually explicit conduct.

As to all Count Two, the defendant admits to knowingly violating Title 18, United States Code, Section 2252A(a)(5)(B), and admits there is a factual basis for the plea and further fully understands that the elements of the crime of Possession of Child Pornography which he admits to knowingly committing and for which he admits there is a factual basis are: (1) defendant knowingly possessed material that contained images of child pornography, (2) which were visual depictions where the production of such visual depictions involved the use of a minor engaging in sexually explicit conduct and such visual depictions were of a minor engaging in sexually explicit conduct, and (3) those images are contained on material that has been transported in interstate and foreign commerce and were themselves transported in interstate and foreign commerce.

**4. FACTS:**

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial.  These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Summary:

In summary, the defendant is recorded on a conference call video application with another male watching multiple videos of child pornography.  The defendant is playing the videos of child pornography for the other two participants on the video call.  HSI determined the defendant lived in St. Louis County and received a valid federal search warrant for his apartment. HSI seized computer equipment, the defendant's cell phone and a micro SD card. The defendant's micro SD card and cell phone contained child pornography.

Details of Investigation:

On July 9, 2018, HSI Special Agent (SA) Austin Berrier, acting in an undercover capacity (hereafter "UC"), logged into a known and identified child exploitation "room" on "Application A". "Application A" is a video conference application that allows users to see each other online. On this occasion SA Berrier observed the participant "773pnperv" screen sharing and distributing child pornography and child sexual exploitation material. Specifically, SA Berrier observed "773pnperv" logged into "Application A" utilizing his internet connected computer to distribute child pornography and child sexual exploitation material to SA Berrier and the other participants. HSI agents link "773pmperv" back a person named "Stephen Finkelmeyer." An investigation into the IP address led them to Stephen Finkelmeyer in Chicago, Illinois. HSI agents seized Finkelmeyer's laptop with his consent, which led them to the defendant because they viewed the following recorded videos on Finkelmeyer's laptop:

(The video file that is captured displays two components: the first, which involves most of the screen, features streamed content being viewed by the user; the second, which involves a smaller portion of the screen, shows what is being captured by the user's webcam at the time the streamed content is being viewed.)

Finkelmeyer and the unknown male (later identified as the defendant) watch a video that shows an adult male anally penetrating an infant with his erect penis. The defendant is the person playing the videos of child pornography on the video call for Finkelmeyer and later also other male. Approximately 30 minutes into the video, the unknown male refers to himself as "Nicholas," but does not state his last name.

HSI agents then took the screenshots of the unknown male's face from the video and sent them to the St. Louis Fusion Center to run the images through their State and Local Law Enforcement databases for facial recognition. The St. Louis Fusion Center returned two potential

4

facial recognition hits from the St. Louis Local Crime Matrix system. One of the individuals, the defendant, was an identical visual match to the unknown male in the "Application A" video.

Video of Stoppelmann playing child pornography videos for Finkelmeyer are found on Finkelmeyer's laptop. Stoppelmann and Finkelmeyer discuss what is happening in the child pornography videos over Application A while the child pornography is playing.

    a.    "Application A"_0.mp4

        i.    This video conference session is approximately 2 hours 5 minutes in length. In the first hour of the video, Finkelmeyer and STOPPELMANN manipulate their penises, inject their bodies with, what they refer to as meth, and have a conversation. Some of the conversation includes the following:

| | |
|---|---|
| Finkelmeyer: | "That blond guy, that gingery blond guy who looks like he's 20 at the most. He is doing a little baby boy. He's got a big cock and is getting it all the way" |
| STOPPELMANN: | "He's fucking doing his job" |
| Finkelmeyer: | "The kid doesn't bleed, doesn't make much noise. He's a good sleeper. I've heard the guy is in jail now. He's got quite a few movies out with his face showing and everything. That's what you do. Be a pedo star". |
| STOPPELMANN: | "My biggest fantasy is to put a baby's face in my hole and suffocate it" |
| Finkelmeyer: | "You need a lot of babies" |
| STOPPELMANN: | "My dick needs it. I can never go back to adults. I would fuck a still born up my ass". |
| Finkelmeyer: | "Fuck yes. Just because it's a still born doesn't mean it's not useful". |
| Finkelmeyer: | "'Application A' and Skype make it possible…pedos, pervs, we share DNA". |
| STOPPELMANN: | "I hope you can watch me fuck a boy" |

On February 11, 2019 and February 12, 2019 Agents with HSI St. Louis conducted surveillance on the defendant's home.

On February 21, 2019, HSI executed a federal search warrant on the defendant's home. Several electronic devices were seized from the home including an Apple laptop, an IPhone, Seagate hard drive, Amazon Kindle fire, and a Sandisk thumb drive. The defendant identified these items as his and not his roommates. He stated that the apple laptop recently "crashed."

FORENSICS:

HSI agent Tim Quinn, an expert at computer forensic analysis, did a forensic review of all the devices seized from the defendant. Quinn noted that Apple laptop could not be accessed and had actually "crashed" as stated by the defendant. This appears to be the device that the defendant used to play the child pornography videos in the "Application A" videos. The Amazon Kindle was locked, but Agent Quinn was able to examine its' SD card which contained evidence of Telegram. Telegram is a computer application similar to "WhatsApp" or other chat group applications. The application is known to people who view child pornography and within the defendant's Telegram app were several folders. Some of these folders contained numerous images of child porn. These images were submitted to NCMEC. The defendant's application contained over 500 still images of child pornography and over 245 video files of child pornography. Also the defendant had looked at or belonged to Telegram groups called, "Kids sex," "Boy Kidz," and "Candy boy."  On the defendant's IPhone, SA Quinn located 1500 image files of child pornography.  In the IPhone notes was information about Application A. Including the website address for it. SA Quinn also located chats in which the defendant and other users are

6

calling each other "pervs" and exchanging user names regarding Telegram and Application A so they can connect on those applications.

In summary, and as the defendant, now admits between July 1, 2018, and February 21, 2019, the defendant knowingly distributed videos of child pornography over the internet, including the following:

1. "10 yo with Hard-on gets Fucked.avi" – a video file that depicts a adult's penis penetrating a minor child;
2. "Matt and his boy full.mp4" – a video file that depicts a male penis penetrating an infant.

In summary, and as defendant, now admits, between July 1, 2018 through February 21, 2019, in the Eastern District of Missouri, defendant knowingly possessed an SD card that was produced outside of Missouri and travelled in interstate and foreign commerce that contained child pornography, including but not limited to the following:

1) "246107869_385964.jpg" – a graphic image file depicting a nude minor child holding a penis;
2) "1_5134491500943507573.mp4" – a video file depicting a male anally penetrating a male minor toddler-aged child;
3) "1_5136537868107145278.mp4" – a video file depicting infant and toddler aged minor children being orally and anally penetrated by an adult.

Defendant knowingly possessed thousands images of child pornography where each video is considered to be equivalent of 75 images.  Many of these images and videos were of prepubescent minor children engaged in sexually explicit conduct, and some portrayed sadistic or masochistic conduct, or other depictions of violence.  Some of the children in these videos

appeared to be under the age of twelve years old, with some children as young as infants. All of child pornography images and videos received by the defendant were through the Internet. After receiving them via the Internet, he then viewed the images and videos of child pornography on computers in his home and also distributed the images over the internet to others.

The internet is a computer communications network using interstate and foreign lines to transmit data streams, including data streams used to store, transfer and receive graphic files. The internet is a means and facility of interstate and foreign commerce.

## 5. STATUTORY PENALTIES:

As to Count One, the defendant fully understands that the maximum possible penalty provided by law for the crime of Distribution of Child Pornography to which the defendant is pleading guilty is imprisonment of not more than twenty years, and a fine of not more than $250,000.  The Court may also impose a period of supervised release of not more than **life** and not less than five years. **The defendant fully understands that the crime to which a guilty plea is being entered, Distribution of Child Pornography, requires a mandatory minimum term of imprisonment of at least five years.**

As to Count Two of the Indictment, the Defendant fully understands that the maximum possible penalty provided by law for the crime of Possession of Child Pornography to which the defendant is pleading is imprisonment of not more than twenty years, and a fine of not more than $250,000.  The Court may also impose a period of supervised release of not more than life and not less than five years.

**6. U. S. SENTENCING GUIDELINES: 2017 MANUAL:**

The defendant understands that this offense is affected by the U. S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category.  The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

**a. Chapter 2 Offense Conduct, Count One Distribution of Child Pornography:**

**(1)  Base Offense Level:**  The parties agree that the base offense level is twenty-two (22) as found in Section 2G2.2(a)(2).

**(2)  Specific Offense Characteristics:**  The parties agree that the following Specific Offense Characteristics apply:

    (a)    two (2) levels should be added pursuant to Section 2G2.2(b)(2), because "the material involved a prepubescent minor or minors who had not yet attained the age of 12 years,"

    (b)    two (2) levels should be added pursuant to Section 2G2.2(b)(3)(F) because the defendant was engaged in distribution, other than distribution described in subdivisions (A) through (E),

    (c)    four (4) levels should be added pursuant to Section 2G2.2(b)(4), because "the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence,"

    (d)    two (2) levels should be added pursuant to Section 2G2.2(b)(6), because "the offense involved the use of a computer or an

9

    interactive computer service for the possession, transmission, receipt, or distribution of material,"

 (e) three (3) levels should be added pursuant to Section 2G2.2(b)(7)(B) because "the offense involved at least 150 images, but fewer than 300."

**b. Count Two, Possession of Child Pornography:**

 **(a) Base Offense Level:** The parties agree that the base offense level is eighteen (18) as found in Section 2G2.2(a)(1):

 **(b) Specific Offense Characteristics:**  The parties agree that the following Specific Offense Characteristics apply:

 (a) two (2) levels should be added pursuant to Section 2G2.2(b)(2) because "the material involved a prepubescent minor or a minors who had not attained the age of 12 years;"

 (b) two (2) levels should be added pursuant to Section 2G2.2(b)(3)(F) because the defendant was engaged in distribution, other than distribution described in subdivisions (A) through (E),

 (c) four (4) levels should be added pursuant to Section 2G2.2(b)(4), because "the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence,"

 (d) two (2) levels should be added pursuant to Section 2G2.2(b)(6), because "the offense involved the use of a computer or an

10

        interactive computer service for the possession, transmission, receipt, or distribution of material,"

    (e)    five (5) levels should be added pursuant to Section 2G2.2(b)(7)(D), because the offense involved "at least 600 images" of child pornography.

**b. Chapter 3 Adjustments:** The parties recommend the following adjustments, other than acceptance of responsibility, apply: none

**(1) Acceptance of Responsibility:**  The parties agree that three (3) levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty.  The parties agree that the defendant's eligibility for this deduction is based upon information presently known.  If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**(2) Other Adjustments:**  The parties agree that the following additional adjustments apply: none.

**c. Estimated Total Offense Level:**  The parties estimate that the Total Offense Level is thirty-two (32).  The parties further recommend to the Court that a four-level variance be granted reducing defendant's Total Offense Level to level twenty-eight (28), which the parties believe will adequately reflect the seriousness of the offense and provide just punishment for the offense.

11

**d. Criminal History:**  The determination of the defendant's Criminal History Category shall be left to the Court.  Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category.  The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**e. Effect of Parties' U.S. Sentencing Guidelines Analysis:**

The parties agree that the Court is not bound by the Guidelines analysis agreed to herein.  The parties may not have foreseen all applicable Guidelines.  The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

**7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

**a. Appeal:**  The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:**  The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea.

**(2) Sentencing Issues:**  In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range recommended by the parties in paragraph 6(c), then, as part of this agreement, the defendant hereby waives all rights

to appeal all sentencing issues other than Criminal History.  Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range recommended by the parties in paragraph 6(c).

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255,  except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:**  The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

## 8. OTHER:

**a. Disclosures Required by the United States Probation Office:**

The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:**

Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c. Supervised Release:**

Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. Some of these special conditions may include that defendant not possess a computer or internet access, that defendant not have contact with minors without the authorization of the Probation Officer, that defendant participate in sexual offender counseling and that defendant not maintain a post office box.  In addition, as a condition of supervised release, defendant shall initially register with the state sex offender registration in Missouri, and shall also register with the state sex offender registration agency in any state where defendant resides, is employed, works, or is a student, as directed by the Probation Officer.  The defendant shall comply with all requirements of federal and state sex offender registration laws.

These and any other special conditions imposed by the Court will be restrictions with which defendant will be required to adhere.  Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release.  The defendant understands that parole has been abolished.

**d. Mandatory Special Assessment:**  Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $200, which the defendant agrees to pay at the time of sentencing.  Money paid by the

defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

Pursuant to Title 18, United States Code, Section 3014, for offenses occurring on or after May 29, 2015, and before October 1, 2019, the Court is required to impose an assessment of $5,000 on any non-indigent defendant convicted of an offense under –

(1) chapter 77 (relating to peonage, slavery, and trafficking in persons, including, but not limited to, 18 U.S.C. § 1591 (Sex trafficking of children or by force, fraud, or coercion));

(2) chapter 109A (relating to sexual abuse);

(3) chapter 110 (relating to sexual exploitation and other abuse of children, including, but not limited to, 18 U.S.C. §2251(a) (production of child pornography) and 18 U.S.C. § 2252A (transportation, distribution, receipt, possession, or access with to intent to view child pornography));

(4) chapter 117 (relating to transportation for illegal sexual activity and related crimes, including, but not limited to, 18 U.S.C. § 2422(b) (enticement of a child) and 18 U.S.C. § 2423 (transportation of minors)); or

(5) section 274 of the Immigration and Nationality Act (8 U.S.C. 1324) (relating to human smuggling), unless the person induced, assisted, abetted or aided only an individual who at the time of such action was the alien's spouse, parent, son, or daughter (and no other individual) to enter the United States in violation of the law.

The assessment imposed under 18 U.S.C. § 3014 is in addition to the mandatory special assessment imposed under 18 U.S.C. § 3013.

**e. Possibility of Detention:**  Normally, the defendant shall be subject to immediate detention pursuant to Title 18, United States Code, Section 3143, however due to the

15

circumstances created by the worldwide pandemic and the defendant's on-going treatment, the Government is recommending continued release after sentencing in this case. Further, the Government recommends that the defendant be allowed to self-surrender to the Bureau of Prisons when instructed.

### f. Fines, Restitution and Costs of Incarceration and Supervision:

The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Sections 3663A and 2259, an order of restitution is mandatory for all crimes listed in Sections 3663A(c) and 2259. Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Sections 3663A(b) and 2259 and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment without regard to the count or counts to which the defendant has agreed to plead guilty.

### g. Forfeiture:

The defendant agrees to forfeit all of the defendant's interest in all items seized by law enforcement officials during the course of their investigation, including, but not limited to the all computer devices seized by law enforcement from the defendant. This includes, but is not limited to the IPhone, Apple laptop, Kindle with SD car, and any other computer devices that were seized.  The defendant admits that all United States currency, weapons, property and assets seized by law enforcement officials during their investigation constitute the proceeds of the defendant's illegal activity, were commingled with illegal proceeds or were used to facilitate the

16

illegal activity.  The defendant agrees to execute any documents and take all steps needed to transfer title or ownership of said items to the government and to rebut the claims of nominees and/or alleged third party owners.  The defendant further agrees that said items may be disposed of by law enforcement officials in any manner. The defendant hereby knowingly and intelligently waive rights the defendant may have (a) for notice of the forfeiture to be given in the charging document, (b) for a jury or the Court determine what of defendant's property is subject to forfeiture, (c) for the Court to explain the forfeiture at the defendant's change of plea hearing, and (d) for the forfeiture to be made part of the oral pronouncement of sentence and included in the judgment.

**9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses.  The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of

17

the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

Defendant understands that by pleading guilty, defendant will be subject to federal and state sex offender registration requirements, and that those requirements may apply for life. The defendant understands that defendant must keep said registrations current, shall notify the state sex offender registration agency or agencies of any changes to defendant's name, place of residence, employment, or student status, or other relevant information. Defendant shall comply with requirements to periodically verify in person said sex offender registration information. Defendant understands that defendant will be subject to possible federal and state penalties for failure to comply with any such sex offender registration requirements. If defendant resides in Missouri following release from prison, defendant will be subject to the registration requirements of Missouri state law. Defendant further understands that, under 18 U.S.C. § 4042(c), notice will be provided to certain law enforcement agencies upon release from confinement following conviction. Defense counsel has advised the defendant of the possible sex offender registration consequences resulting from the plea.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

If the defendant is not a U.S. citizen, the guilty plea could impact defendant's immigration status or result in deportation.  In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory.  Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

**10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case.  In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea.  The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

**11. CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if defendant commits any crimes, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement.  The Government may also, in

its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

5.12.21
Date

COLLEEN C. LANG
Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, Missouri 63102
(314) 539-2200

5/12/21
Date

NICHOLAS STOPPELMANN
Defendant

5/12/21
Date

NANCI MCCARTHY
Attorney for the Defendant